UNITED STATES of America, Plaintiff,

v.

2.24 ACRES OF LAND, Harlan County, Kentucky; Danny Castle; Charlene Ball Castle, Individually and as Executrix of the Estate of Pauline Brassfield and the unknown heirs of Smith Ball; et al., Defendants–Appellees,

Mattie BALL, Defendant–Appellant.

No. 00–6493.

United States Court of Appeals, Sixth Circuit.

Aug. 8, 2002.

Before SUHRHEINRICH, SILER and GILMAN, Circuit Judges.

PER CURIAM.

This action was initiated by the United States of America in regard to a condemnation of 2.24 acres of land situated in Harlan County, Kentucky. Defendant Mattie Ball appeals the order of the district court declaring Charlene Ball Castle and Danny Castle the fee simple owners of that tract of land and dismissing her from the action. For the reasons that follow, we affirm.

## Background

This case involves a dispute over the ownership of 2.24 acres of condemned land. The property was originally conveyed by deed dated April 15, 1920, from Frank Farmer and wife, Emily Farmer, to Smith Ball, trustee for his son, Charley ("Charlie") Ball, who was then a minor. Smith Ball died intestate in 1954, survived by his widow, Mattie Ball, and his son, Charlie Ball. Charlie Ball died intestate on December 1, 1966, survived by his widow, Pauline Ball, and his daughter, Charlene Ball Castle. The report of appraisers in the Estate of Charlie Ball listed the 2.24 acres of land as an asset of the deceased. Accordingly, Pauline Ball and Charlene Ball Castle each inherited an undivided one-half interest in the 2.24 acre parcel. Pauline Ball subsequently married James Franklin Brassfield. After Pauline's death, a settlement and agreement order was entered, in which Mr. Brassfield waived any interest in the subject property, leaving Charlene Ball Castle the sole record owner of the property, subject to any interest of her husband, Danny Castle.

The United States filed a complaint in condemnation against the 2.24 acres of land. Defendant Mattie Ball claimed an interest in the property, arguing that the deed conveying the property to Smith Ball as trustee for his son was ambiguous and insufficient to have passed title to Charlie

Ball and his heirs. Thus, Mattie Ball asserted that as an heir of Smith Ball, she was an owner of an undivided interest in the property.

Following an ownership hearing and the submission of exhibits, the district court determined Charlene Ball Castle and her husband, Danny Castle, to be the sole fee simple owners of the subject property. It rejected the contention that the trust created in the deed was a "dry trust" and explained that the Charlie Ball heirs had not only paper title but had also exercised full control over the property since the death of Charlie Ball. It also dismissed Mattie Ball and held she was not entitled to any compensation.

## Discussion

We review *de novo* the court's conclusion of law that Charlene Castle and her husband are the fee simple owners of the 2.24 acre parcel. *See, e.g., Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1165 (6th Cir.1996).

■ On appeal, Mattie Ball claims that because Smith Ball died intestate and there was no trust document which provided for the distribution of the subject property upon his death, legal title to the property vested in his heirs at law. She cites *Rohleder v. French,* 675 S.W.2d 8 (Ky.Ct. App.1984), as controlling authority. The inter vivos trustee in *Rohleder,* at the time of his death, owned a parcel of real estate which had been conveyed to him as "trustee with full power in said trustee to mortgage, sell, trade and convey on any terms he sees fit, without any such mortgagee, purchaser or grantee, being required to look to the application of the proceeds thereof." *Id.* at 9. The court held that when the trustee died intestate, legal title to the property he held as trustee vested in his heirs at law because there was no evidence that a trust instrument existed

which provided for a disposition of the property upon his death. *See id.* at 10. Therefore, the heirs could legally convey a marketable title even though "no evidence existed as to the terms of the trust or the identity of its beneficiaries." *Id.* Unfortunately for Mattie Ball, evidence exists in the deed as to the terms and beneficiaries of the Ball trust, distinguishing this case from *Rohleder.*

The 1920 deed lists Smith Ball at trustee for his son Charlie Ball and provides:

And the said party of the second part as Trustee aforesaid is given full right and authority to use and control the foregoing described property in any way or manner which he may deem fit or proper and to the best interest of his said son, or to sell and convey the same and collect and use the proceeds of such sale and re-invest the same in any way or manner which he may deem proper and to the best interest of his said son, without accounting to his said son or to anyone else for the proceeds of such sale or the reinvestment of the same.

The language in the deed expressly states that Smith Ball was to hold the subject property for the benefit of his son Charlie. Thus, although Smith Ball held legal title to the property, equitable title resided with his son. As trustee, Smith Ball held the trust property subject to the equitable duties to deal with it for the benefit of his son.

■ The fact that Smith Ball could sell the property and appropriate the proceeds does not render the trust invalid. *See* 76 Am.Jur.2d *Trusts* § 33 ("And a trust is not rendered ... invalid by reason of the fact that ... the settlor reserves the right to sell the property and appropriate the proceeds."). Thus, we reject Mattie Ball's contention that based solely on these re-

served powers, she controlled the property after her husband's death.

 Ordinarily, however, a trust is limited or conditioned in duration by the express terms of the instrument. There is no provision in the deed for the disposition of the property upon the trustee's death. "The mere fact that no time is stated in a trust instrument or declaration for the termination of a trust does not render it void for uncertainty; its limitation in time can be inferred." 76 Am.Jur.2d *Trusts* § 92. In construing trusts, it is necessary to ascertain the settlor's intent and to give effect to this intent. *See* 76 Am.Jur.2d *Trusts* § 35. It is clear from the language of the deed that Smith Ball intended to act as trustee of the property for the benefit of his son, who at the time of the conveyance was a minor. Charlie Ball was the intended beneficiary of the trust and Smith Ball, as trustee, was to manage the property for the benefit of his son. It is logical to infer from the terms of the trust that it was Smith Ball's intent that upon his death the property would pass to Charlie Ball as the sole beneficiary, bringing to a conclusion the separation of legal title and equitable ownership.

After Smith Ball died, Charlie Ball exercised control over the property and began collecting rents from the tenants thereon. When Charlie died twelve years later, the property was listed as an asset of his estate and passed to his wife, Pauline Ball, and daughter, Charlene Ball Castle. Charlie's wife and daughter assumed control of the property and even conveyed a portion of it to a third party in 1969. The district court correctly held that the Charlie Ball heirs not only had paper title to the tract in question but also exercised full control over the property since the death of Charlie Ball.

Accordingly, the district court correctly dismissed Mattie Ball from the condemnation action after declaring Charlene Ball Castle and her husband, Danny Castle, the fee simple owners of the 2.24 acres of land.

AFFIRMED.